We have two cases that have been combined, Joan Frank and others v. Antigua and Barbuda and the official Stanford Investors Committee v. Antigua and Barbuda and we will be hearing from Mr. Newcomer first May it please the Court, my name is Josh Newcomer, I represent Antigua There is no dispute that Antigua is an independent nation entitled to sovereign immunity and thus one of the exceptions defined by the FSAA applies The commercial activity exception is at the heart of the tort claims in dispute on this appeal As recently as last term, in Sachs, the Supreme Court directed us to look at the gravamen of the complaint the core of the suit, as alleged against the named defendant The gravamen of plaintiff's tort claims in this case are that an independent instrumentality the FSRC and its corrupt head, Leroy King, failed to regulate an Antiguan bank, Stanford International Bank and therefore a private individual, Alan Stanford, got away with the fraud The resolution of this case thus turns on the question Can appellees defeat Antigua's presumed sovereign immunity based on the acts of others based on the acts of FSRC, King and Stanford The answer is no Allowing plaintiffs to evade the FSAA's strict restrictions in terms of jurisdiction through generalized quid pro quo allegations would depart from the Supreme Court's instruction not to give credence to artful pleading During the argument today, I'd like to focus on two areas that show that the district court below lacked jurisdiction First, the acts of the FSRC and King are not the acts of Antigua Second, or it's consistent with that I should say, the acts of Stanford aren't the acts of Antigua The acts of FSRC, King and Stanford are legally irrelevant for purposes of sovereign immunity analysis In the same vein, the claims against Antigua in this case are not based upon the acts of Antigua at all The alleged acts by Antigua are not the gravamen of the complaint And the acts by Antigua and the acts by all of the alleged actors here, FSRC, King and Stanford are not in connection with the commercial activity, the loans at issue only related to the breach of contract claims The second point I want to get to is paralleling arguments you just heard in the LIA case And that is there was no direct effect in the United States here The direct effect here is lacking for many reasons First, the acts of Antigua, which we are focusing on, didn't do anything directly in the U.S. They had to act through others, including FSRC, King, Stanford And even the court's imputation that the Stanford entities were all a single enterprise What is the act in this particular case that is alleged to give jurisdiction to the act, the commercial act? So the commercial acts apparently, as alleged against Antigua, are the loans And there's no doubt Antigua took loans from Stanford entities, one of which was Stanford Financial Group Others are Bank of Antigua, which was an Antiguan bank, and there are some other alleged loans But the point we're making here is not that those loans weren't in connection with commercial activity Because Antigua is defending those loans in the case below The question is whether the far-reaching aiding and abetting claims, the conspiracy claims Whether those arise out of a commercial activity And the answer to that question is clearly no It was a fiction that the district court engaged in When it said that there's a quid pro quo allegation between the commercial contracts, the loans And the acts of FSRC and King that gave rise to the tort claims And let's be clear, the district court looked at the complaints, parsed the complaints And found that the allegations of the complaints are that, for purposes of the tort claims Are that Stanford engaged in a fraud, and the FSRC and King shielded that fraud That was FSRC's job, and King was undoubtedly the head of the FSRC Not a government official, because the FSRC is presumed to be a separate instrumentality Not the government of Antigua And that's the point where I think the district court erred in finding these quid pro quo allegations to be sufficient Because you have separate status, the quid pro quo is nothing more than artful pleading To get around the presumed separate status of the instrumentality, FSRC and its head, King And the government of Antigua, which is the sovereign here And there is no basis to set aside that separate status of FSRC and King If we think about it, there are a number of bases that the courts have held That say, here's how you set aside the separate status of the instrumentality The control test, alter ego test On appeal here, plaintiffs do not argue that those tests apply We just heard about them as between LIA and LAFICA That there's some kind of control relationship here There's no argument that there's a control relationship or any alter ego here In fact, what plaintiffs say is, for the first time on appeal They're making the argument that there was a common law agency relationship Between FSRC, King and Antigua And not only FSRC and King, but also Stanford, even farther removed But what does this court in the Dale case say about how you get to common law agency? And it says you have to have actual authority, actual agency Apparent agency doesn't get you there And there are no allegations of actual agency And I want to focus on that because what plaintiffs have done through artful pleading Is they are alleging conclusions masquerading as facts They say Antigua, through the FSRC, did something But all the details are things that the FSRC or King did, not Antigua They allege Antigua, through the FSRC and King, accepted bribes or what have you But those aren't actually the acts of Antigua The only allegation are these generalized Antigua acted through FSRC and King But guess what? We put into dispute at the district court level The fact that Antigua is not the FSRC The FSRC is a separate agency in instrumentality We cited to the codes that set up their obligations And in fact, plaintiffs cite in their complaints The codes that set up the obligations of FSRC And what were those obligations vis-a-vis Stanford International Bank And all other offshore banks in Antigua? It's to regulate them, to audit them, to communicate with the SEC and others About what the banks are doing Those were all acts taken by the FSRC And simply applying a label saying it's through Antigua Is not sufficient to deprive Antigua of its presumed sovereign immunity here They also engage in artful pleading through what I'll call generalized pleadings About what Antigua did But then when you get to the specifics You realize it is still FSRC and King For example, paragraph 6 of the OSIC complaint They say Antigua engaged in a blood oath with Stanford They say it again in paragraph 12 Well, guess what? You get to paragraph, I believe it's 86 And it's all alleged to be King King, the head of FSRC, not an Antiguan official Was said to have been engaged in a blood oath with Stanford That's not an act of Antigua Although they say it in a generalized allegation When you get to the specifics that they plead And we know it's true That is something that was done not by Antigua But by a different entity or the head of a different agency, I should say I want to turn to the direct effect prong next Because I think it's an important prong and you all just heard about it In this case, the effects are incredibly indirect Think about what we have when we have an allegation that Antigua has a separate instrumentality, an agency Independent, called FSRC It's head, King, engaged in a fraud with Stanford And Stanford and his entities sold CDs to investors in the United States There's nothing direct about that connection You have to go through multiple steps FSRC, King, Stanford to get to any investment in the United States And, of course, that is not the type of direct effect As this court held in Can-Am That's not the type of direct effect that was found to be sufficient in the Caleo case And the Voest Alpine cases And we also have, as you all heard, the legal fiction That the investments and all the acts vis-a-vis all of the Stanford enterprises Occurred in the United States But remember, even from the FSRC's point of view It was regulating an Antigua bank It's not investing in the bank It's not doing business with the bank It's regulating a bank And why does it have the authority to regulate the bank? Because the bank was based in Antigua It's an Antiguan bank that is at issue there Not the broad-sweeping conspiracy And all the different enterprises of Stanford That are regulated by the SEC and others here in the United States So there's an important distinction to be made here And the question that the court has to answer is Are you going to hold Antigua without any allegations Of control, alter ego, or actual agency To lose its presumed immunity Based on the acts of FSRC, King, and Stanford? The answer under well-established case law And as determined by the Supreme Court on multiple occasions is no In fact, in this case, you have certain allegations Of things that were done by Antigua But those allegations do not give rise to the claims at issue In other words, they fail the based-upon test that we just heard about There are certain allegations such as Antigua engaged in land sales Or coerced landowners in Antigua to sell land at cut-rate prices to Stanford Some of those were alleged not to have actually been consummated That's not the basis of their aiding and abetting claims That's not the basis of their conspiracy claims Remember, those claims have as their core, as their gravamen The fact that somebody did something to shield the fraud from discovery And that somebody was Leroy King And that somebody's agency and instrumentality was the FSRC Those acts that they specifically alleged that shielded Stanford's fraud from discovery Leroy King sending a letter to the SEC Discussing the types of investigations that the FSRC had done Vis-a-vis Stanford International Bank of Antigua What else? Receiving letters from the SEC And handing them off to Stanford who was bribing him No doubt about that But what do we know? We know that those aren't the acts of Antigua And again, those aren't the acts of a government official Which takes me back to the whole concept that we have here Which is, can on such thin reed you hold the acts of Antigua To give rise to a claim when it's really the FSRC and King In independent instrumentality doing those acts? And the answer is no And this gets to the heart of the issues of comedy that underline the Foreign Sovereign Immunities Act Because you have a small nation You have a suit for the tort claims That is alleging $7 billion That is seven-fold the entire GDP of Antigua That's like Antigua suing the U.S. for $120 trillion But as I mentioned at the outset, we're not talking about ill-gotten gains here The contract claims will be defended So the money that allegedly is the commercial act, we're defending The two loans, one of them was payable in the U.S. in cash We admit that that's the type of direct effect that qualifies Because there aren't all these steps to go through Do we know if Mr. King's money that he got went back to Antigua? Or did Mr. King keep it? There's no allegation it went back to Antigua He kept it The allegation is he put it in bank accounts I think some of them in the U.S. is the allegation But there's absolutely no allegation that those funds, the funds of the bribed regulator Actually in any way reached Antigua's coffers And why would we? They were bribing him to not enforce the laws that Antigua had in place And there are other acts of Antigua And I have no doubt that opposing counsel is going to get up here and say Well, this act or that act is at issue But all of the core acts about aiding and abetting the fraud Those are the acts of FSRC and King The other acts aren't the gravamen of the complaint for the tort claims And finally, I want to wrap up with the Tufta claim We have the breach of contract claims which we said we're defending below The fraudulent transfer claim As we just heard in the prior argument There's a step there that's missing First of all, it involves the transfers under the same loans We said we'll defend the loans But the distinction is one that is not just academic Because we're defending the loans The allegation, if you look at the Tufta claim in both complaints Excuse me, it's only surviving in the OSIC complaint So the investor committee complaint is the only one that has a Tufta claim The allegation there is that Stanford took this money Wrongfully took the money from investors and their accounts And then transferred it to Antigua abroad Well, you have no direct effect there Because the entire fraudulence was completed before Antigua got the money And it's very important for sovereigns to be able to receive loans On the presumption that they're not fraudulent So the Tufta claim misses that direct effect element And that's why there's no commercial activity exception for the Tufta claim So finally, your honors, I think to be clear Just because there's two complaints and multiple different claims We're asking that you reverse and render or remand for judgment In Antigua's favor in the Frank case The only claim remaining in that case is an aiding and abetting claim Aiding and abetting fraud In the OSIC case, there are, I believe, seven claims left Four of them are the fraud-related claims Aiding and abetting fraud, aiding and abetting The violations of the Texas Securities Act Aiding and abetting breaches of fiduciary duties And the civil conspiracy You should reverse for dismissal of those claims Reverse for dismissal of the Tufta claim And obviously we have agreed to defend the breach of contract claims Thank you, your honors Mr. Newberg Good morning, your honors May it please the court For 20 years, the government of Antigua Was in a partnership with Mr. Stanford That is what both of the complaints issued before you today Allege in exquisite detail This is not this Neither of the complaints is a case about Mr. King and bribery Yes, they've admitted that It was, of course, put forward in the prosecutions by the Department of Justice But that's not this case And that is not the allegations of the two complaints What we have here is a 20-year history As alleged in the two complaints Of a joint venture between Mr. Stanford And the government of Antigua Not just Mr. King And let me be clear when we say the government Our complaints Both the class action complaint And the investor receiver complaint The OSIC complaint Spell out allegations that the prime minister himself Was directly involved This is in the complaint It's part of the conspiracy claim It's part of the aiding and abetting the fraud claim The minister of finance Was involved in our alleged pleadings For both the class action And for the OSIC complaint The minister of tourism The parliament itself With legislators That is the government The sovereign government of Antigua That is the defendant in this case And both complaints allege That the acts As required by the commercial activity exception The third prong The acts are those of Antigua As a partner with Mr. Stanford And the efforts of Antigua's council To redraft the two complaints literally And turn them on their head As if this was simply a case against Mr. King That is not this case And with respect This is not like the earlier case Involving the Libya sovereign wealth fund Where there are issues that are raised About separateness and the like This case is clearly brought by The investors who lost 7 billion dollars And the receiver of course For the loans stepping into the shoes Of the receiver estate Against the government The party, the partner To the Ponzi scheme So with that Let me please address The very specific legal issues That are before you And what is in an unusual context A partial interlocutory appeal Which is a little unusual For these foreign sovereign cases Because as Antigua's council Has made it clear The case is continuing regardless Of the outcome of this appeal They have conceded they don't have immunity For some of the loans And we've alleged there are scores of loans They've admitted there's no immunity For at least two of them And the discovery that will be taken Regardless of the outcome here Will probe What the government of Antigua knew And when it knew it Not just Mr. King I cannot overemphasize that They are trying to rewrite our complaint Now remember We're at the rule 12 stage In the district court The allegations of the complaint Are accepted as true for purposes Of the district court's evaluation Of both complaints And the FSIA requirements And this court in its de novo review Also looks to the allegations of the complaints Which are very detailed Of course paragraph 133 Of the OSIC Complaint points out The nature of the conspiracy Between the government Not just Mr. King The government And the class action complaint The Frank claim Goes on at length With recitations What is the commercial activity that was Affected in the United States Very simple and following the third prong of the FSIA Number one We first look to the act It can be a commercial act or a non-commercial act We know from Weltover And Justice Scalia's opinion For a unanimous Supreme Court Even a presidential decree Can be an act under the commercial activity exception And that's what we have alleged here The acts of the prime minister The finance minister, the parliament Those are the acts, that's step one Step two, in connection with The acts are in connection with Directly and for no other purpose To help their partner Mr. Stanford Perpetrate the Ponzi scheme There is no other purpose There is no other allegation in our complaints And they are accepted as true for purposes of rule 12 So again, what is the commercial act that took place? The Ponzi scheme The partnership These officials weren't in the United States selling CDs And the FSIA third prong does not require that Where we allege That there is a partnership Between the government at the highest levels And Mr. Stanford It is the acts, which are detailed In connection with And as Justice Scalia showed us in Weltover The in connection with means Whatever acts they take Simply have to be in connection with the commercial activity Here, that commercial activity Is the Ponzi scheme That the partnership was created to carry out That had no other function It was to carry out this multi-billion dollar Partnership To steal billions of dollars In phony CDs Through this Houston based operation So the commercial activity Is the Ponzi scheme by the partners And then finally, what's left Is the last piece, the last step Of the third prong Which is the direct effect The direct effect was stealing Seven billion dollars from investors And the receivers, now a state In the United States Are they co-conspirators? If we were, well we've alleged conspiracy Of course is a civil conspiracy So yes, they are co-conspirators As a civil conspiracy We're not here, I'm not a U.S. attorney anymore I'm not alleging criminal conspiracy But for civil conspiracy, yes They are partners and co-conspirators As alleged in the complaints Aiding and abetting fraud Just like in any Type of situation, if the evidence Developed In discovery supports that, that's a merits issue But for purposes of Rule 12 We have more than sufficiently Alleged that this partnership Between the government at the highest levels And Mr. Stanford Was clearly Fit within the third prong of the commercial Activity exception, clearly And I think from an allegation standpoint I would also point out for the court As I know you're familiar from the record It's not just the allegations of the complaint Which are enough at this stage We also put into the record Below The indictments in the criminal cases Against Mr. Stanford and his colleagues Which refer to things that were going on They didn't indict the government of course But they refer to that The SEC receiver case Which has hired a forensic Accountant and that's set forth In the complaint, Ms. Tassel's Affidavit and report Talk about extensive Relations, commercial vehicles All these loans This is not a commercial dispute case We're not just here suing on breach of contract That is a claim and it will proceed Of course, but these loans Which were with the government Not Mr. King, they were with the government Either by acts of parliament Or under the signature of the Prime Minister And the Minister of Finance, the government Are part of the Ponzi scheme And 20 years Of acts are at issue here You don't think we can separate A loan taking place In Antigua from the Ponzi scheme Of selling CDs in the United States That they're two different Situations? For today's, I'm sorry For purposes of today's hearing I think you cannot I think what you're raising Your Honor is on the merits Once immunity is taken away And we litigate the merits In discovery, summary judgment, bench trial Wherever it's worked out At that stage, if Antigua's Defense is we only Did this, we didn't do that That's on the merits But we're not here discussing the merits today This is obviously a partial Interlocutory review of a denial Of immunity and for that We look to the allegations of the complaint And the supplements in the record That support those allegations And so to answer your question directly I don't think you can separate the two Because our case, our cases We have two cases, are that the loans Were simply an instrument that was Part of the partnership It happens to be a convenient instrument Because it was a way for Mr. Stanford and his entities To funnel apparently Hundreds of millions of dollars Of stolen ill-gotten gains Our allegations are every dollar That was paid to Antigua Came from the Ponzi scheme Every dollar that came through those loans Was part of the Ponzi scheme So for purposes of the pleadings That is relevant and cannot be separated out And I hope that's clear Now, I think that The other issue that was raised This morning is that somehow This is just a rogue operator Mr. King As I've made clear Mr. King is not the defendant here The government is We have alleged throughout the complaints That Mr. King and his agency Did act on behalf of the defendant government We say that over and over again In the complaint But that's because he was placed In that position By the Prime Minister By the Minister of Finance As part of the conspiracy And so we have alleged Acts of the government The proper party defendant here And yes, Mr. King Is an element of that, of course But not because he was a rogue operator But because he Was placed there For this very purpose Because the partners, Mr. Stanford And the government Saw that was a critical element To carry out the conspiracy That is what we have alleged And there is a lot to support that In the government's criminal prosecutions Which we've referenced And in the SEC's receiver cases Now, we'll see what The discovery fleshes out What did Antigua know And when did it know it Will obviously be the focus Of the discovery that's going to take place Regardless of the outcome of this appeal Because they've conceded There will be discovery But for purposes of the remand Your Honor The district court's ruling That Antigua is not entitled To immunity on the tort claims Is not supported When you actually look at the complaints Now, we submitted hard copies Of the complaints Which are, of course, part of the record For the panel's review And time does not allow me To go through them in detail Because they read like indictments And they are long But a 20-year partnership Is going to have a lot of actions Some of which we know about And frankly, some of which we don't yet know about And that's what we will establish In the discovery But we have alleged enough In the complaints To more than satisfy all three elements Of the third prong Of the commercial activity exception I would just note Just since it was raised at the end of Antigua's counsel's argument On the Tufta claims Which they have also appealed There's waiver As well as commercial activity exception Those are independent statutory bases For withdrawing and lifting immunity For this sovereign government And the fact that this government Is a small Caribbean nation And doesn't have as many people As the city of Houston or New Orleans Is irrelevant Comity is irrelevant here If Antigua did not want to be held accountable For a multi-billion dollar Fraud case and conspiracy Then they never should have spent 20 years In business with Mr. Stanford Helping him steal all this money They cannot now complain That they're being held accountable Under the Foreign Sovereign Immunities Act I might add Properly and squarely pled And then say well sorry we're a small poor country Why are you doing this to us Now I think that as we go through The particulars Of what Antigua did The acts if you will We list many in the complaints But one I'd really like to point the court to And which Antigua's council Is trying to basically rewrite the complaint Is when the Securities and Exchange Commission The U.S. government Started investigating this Ponzi scheme They reached out And made formal inquiry To the government of Antigua They didn't just make a phone call To Mr. King's private cell phone And ask him what he was doing that afternoon This was a formal government to government Inquiry Of a major investigation Of a fraud taking place In the United States Not in Antigua And as alleged in the complaints And as established in the criminal prosecutions The government Of Antigua The defendant here Tipped off its partner They tipped him off Through the gentleman Mr. King That the Prime Minister and Finance Minister Had put in that very position It is the acts of the Government that resulted In tipping off Mr. Stanford And the direct effect of that Of those acts In connection with the Ponzi scheme Was to allow the Ponzi scheme To continue in the United States I might add It also frustrated the SEC investigation And it frustrated The criminal investigations Those are relevant For you to look at because they're both Led in our complaints And they're part of the supplemental evidence That we submitted in response to this assertion Of immunity So you're saying the direct effect was that Antigua told him you're being investigated? Yes And now the investigation was broad I'm giving an example of many acts We've alleged I just want to be clear But a government That takes an act That tips off its partner Its partner in crime which is what we call them In this complaint When they tip him off It only has one purpose Which is to continue to perpetrate The fraud, the Ponzi scheme In the United States And why would Antigua do that? Because they are partners in this venture They have been getting tens and hundreds Of millions of dollars Directly out of the fraud Directly Not indirectly Their partner sells the CDs The money's coming from Mr. Stanford Their partner, yes You're saying he's this partner But the money's coming from Stanford Not from the victims It's now in Stanford's Possession He's the one paying it off To the officials To the officials And to the government Put aside the bribes to individuals For purposes of the FSIA I'm concerned with what's going to Happen to the government itself Because it's the acts Which they clearly are alleged to have taken It's in connection with And as we know from the Weltover seminal case In connection with means A government act that's in connection With a commercial activity Is covered by this exception Clearly that was a unanimous Supreme Court decision By Justice Scalia And finally the direct effect is Well in part we know the loans were payable And the loans are the instruments for the fraud That Antigua is participating in They never paid back a nickel Some of them were forgiven by Stanford Why? We're not talking about the frauds The loans are, they're conceding that the loans are not at issue In this appeal But they're only conceding it for purposes Of one of our claims They want to pick and choose which of our claims The loans are relevant to And we have alleged at length That these loans are more than Innocent commercial transactions If that was all we had here If that's what we were alleging Then Judge Owen, that might be correct But that's not our complaint That's not what we are alleging We are alleging that for 20 years Mr. Stanford and the Prime Minister And the Minister of Finance And the Parliament did the loans As part of the conspiracy I thought, maybe I misunderstood That you could still make those arguments With regard to the loan claims That's an interesting question In the question of procedure as well as substance Judge Owen Because we're in a very unique situation here Of a partial interlocutory appeal Of the denial of immunity That's not normally how these cases come up Of course But where Antigua concedes That we can continue to litigate Our breach of contract claim For at least some of the loans We've alleged dozens of them They're only conceding the two so far Obviously If the discovery bears it out We can support a claim Or amend claims to add conspiracy and fraud That depends on the discovery But they can't have their cake and eat it too They can't say we're going to continue To take discovery about the loans But we can't ask questions about What did Antigua know and when did it know it Which would support the conspiracy And aiding and abetting fraud claims They're trying to pick and choose from a tactical advantage Knowing that that discovery Is going to take place anyway Regardless of this partial interlocutory appeal And as we have pointed out Under Rule 12 Our allegations in both complaints Which are extensive Allow us to raise claims And I believe it's this court's Seminal decision in the Fuller Aircraft case Which I think Judge Weiner sat on A number of years ago That says once the immunity is lifted You can proceed with contract Or tort claims Because they all have to arise from the same General set of facts and evidence And that's what we're doing here We don't have different facts and evidence It's one partnership 20 years of Many things they were doing The loans being part of it And we allege that the loans were more than just Innocent commercial paper They were part of the fraud Between two partners In the fraud That's the direct effect And that's clearly enough For purposes of satisfying The Rule 12 allegations Under the third prong of the commercial activity exception And that is the reason Why the loans mean more Than just commercial dispute Or what I call innocent commercial dispute For breach of contract They were part of the fraud Now I think that I see I'm almost out of time And I do want to quickly wrap up But I want to note For the panel That I'm unaware of any case that's ever been brought Against a sovereign Where The sovereign was so clearly involved Itself in the fraud This is not like the case you heard earlier Where the Libya sovereign wealth fund Was basically a client of Stanford Regardless of whether they were a client Who knew about the funny business or not This is not that case We're not suing victims We're suing the partner In the conspiracy This is of course the first time This has been before this court After about five or six years of Stanford Relating matters coming before Panels of the Fifth Circuit But it was simply because of the nature Of how Judge Godby has administered the docket That it wasn't until last summer That he resolved the Rule 12 motions In both cases which are under review In the consolidated appeals So yes, this is the first time That you are hearing Directly what Antigua's Government's role was But we have more than satisfied the requirements Of the FSA commercial activity exception And we would please ask That we be allowed to continue the work In the district court to hold them accountable For their role in this partnership Thank you very much I want to briefly cover a few things First You didn't hear a lot about the FSRC there It didn't talk about the Separate agency and instrumentality And that's key because what was the one Specific fact he pointed to? It was that The SEC in the United States Made an inquiry But look at their complaint, paragraph 50 In or about 2005 SEC commenced an investigation Began making official inquiries to the FSRC That's their allegation To the FSRC I have two questions About the bribe to the prime minister And owning the airport and the hospital And the minister of finance And the tourism What about all of that in parliament? Sure, there's no doubt they've alleged Money payments to the prime minister Or to others But remember what we just learned From Sachs last term Which is you focus on the gravamen of their complaint And here the gravamen of the TOR claims Are the aiding and abetting Of Stanford's fraud And that's what the district court held And this was the district court's mistake It said you can't rely on FSRC and King The gravamen is aiding and abetting But I'm going to rely on FSRC and King Anyway to find the based upon element To find the direct effect element And to find this amorphous Quid pro quo Which isn't an element Or has anything to do with the claim It's just a way to meet the in-connection requirement Through artful pleading The mistake is that They don't allege anything That says the Prime minister of Antigua Was engaged In the shielding Of Stanford From the SEC Or any other investigator That he was engaged in any way of Aiding and abetting the fraud And that's important because the facts they point to The SEC asked the FSRC It's advertised that Antigua regulated these companies These kinds of investors adequately And they were safe investments Who advertised it? It's a great question your honor Two advertisements occurred One was Stanford obviously put it In the annual reports Or prospectuses that Stanford issued Not an act by Antigua Second is the FSRC As alleged put on its website That here are the acts We take vis-a-vis all of The offshore banks based in Antigua Including Stanford International Bank And that's what plaintiffs allege Was a misrepresentation By the FSRC Setting aside that a misrepresentation by the FSRC Should be considered under the non-commercial tort exception And it clearly doesn't apply and they haven't argued it It's the acts of the FSRC In representing protection Of investors They allege that Antigua put Stanford Himself in charge of regulating Itself In charge of Stanford And Stanford in charge of writing the banking rules Right well again there's no allegation For the banking rules It's sort of a legally irrelevant effect What they alleged was that Stanford Was appointed to a board That made recommendations to the Legislature of Antigua We don't know from the complaint What the legislation is But we do know that it only came into play After the fraud had been perpetuated When the SEC came asking For the names of investors It was effectively a banking Secrecy law, has nothing to do with Their aiding and abetting fraud claims And their conspiracy claims that are at issue Here, same with appointing Stanford As head of A predecessor to the FSRC There's no connection in the complaint About how that aided and abetted And this is the other real mistake That we're seeing here In the argument of the appellees And that's, it's all about Stanford The conspiracy with Stanford The agreements with Stanford, well guess what There's no allegation that Stanford had Actual authority to act on behalf of Antigua and therefore there's no direct Effect, there's no There's no anything in terms Of the based upon requirement Or any other requirement And I see I'm out of time May I finish your honor? There's no basis in which to Hold the acts of Stanford To be the acts of the government officials Thank you Thank you all very much The court, that completes our